**Exhibit A**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| **MFM DELAWARE, INC.,** | ) | **Case No. 13-11359 (PJW)** |
| **MFM INDUSTRIES, INC.,**[1] | ) | **Case No. 13-11360 (PJW)** |
| | ) | |
| Debtors. | ) | **(Joint Administration Pending)** |
| _____ | ) | |

**INTERIM ORDER PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, 364 AND 507: (I) AUTHORIZING DEBTORS TO INCUR POSTPETITION SECURED INDEBTEDNESS  PURSUANT TO SECTIONS 105(A), 362, AND 364(C); (II) AUTHORIZING THE DEBTORS TO ENTER INTO RATIFICATION AGREEMENTS WITH BIBBY FINANCIAL SERVICES (MIDWEST), INC. AND CROSSROADS FINANCIAL, LLC (III) AUTHORIZING THE USE OF CASH COLLATERAL PURSUANT TO SECTION 363 OF THE BANKRUPTCY CODE; (IV) GRANTING ADEQUATE PROTECTION PURSUANT TO SECTIONS 105, 361, 363 AND 507 OF THE BANKRUPTCY CODE; AND (V) SCHEDULING A FINAL HEARING PURSUANT TO BANKRUPTCY RULES 4001(B) AND 4001(C)**

This matter having come before the Court upon the motion (the "DIP Motion") by MFM Delaware, Inc. ("MFMD") and MFM Industries, Inc. ("Industries" together with MFMD, the "Debtors") in the above-captioned Chapter 11 case, pursuant to sections 105, 361, 362, 363, 364 and 507 of title 11 of the United States Code (the "Bankruptcy Code"), seeking, *inter alia,* entry of this interim order ("Interim Order"): (A) authorizing the Debtors to incur post-petition secured indebtedness, (B) authorizing Industries to enter into agreements ratifying the Loan Agreement and the Receivables Sale Agreement (as those terms are defined below); (C) authorizing the Debtors to use cash collateral, (D) granting adequate protection to the Pre-petition Lenders (as defined below), and (D) scheduling a final hearing pursuant to Rules 4001(b) and 4001(c) of the

---

[1] The last four digits of the taxpayer identification numbers of the Debtors follow in parentheses: (i) MFM Delaware, Inc. (3784); and (ii) MFM Industries, Inc. (6720).

Federal Rules of Bankruptcy Procedures (the "Bankruptcy Rules").  All capitalized terms used but not defined herein shall have the meanings given to them in the DIP Motion.

The Court having considered the DIP Motion, *Declaration of Matthew A. Crane in Support of First Day Motions and Applications*, the DIP Documents and the evidence submitted at the interim hearing held on May 29, 2013 (the "Interim Hearing"); and notice of the Interim Hearing having been given in accordance with Bankruptcy Rules 4001 and 9014 and the Local Rules; and all objections, if any, to the interim relief requested in the DIP Motion having been withdrawn, resolved or overruled by the Court; and it appearing to the Court that granting the interim relief requested is necessary to avoid immediate and irreparable harm to the Debtors and their estates pending the Final Hearing, and otherwise is fair and reasonable and in the best interests of the Debtors and their estate; and after due deliberation and consideration, and for good and sufficient cause appearing therefor;

BASED UPON THE RECORD ESTABLISHED AT THE INTERIM HEARING BY THE DEBTORS, THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:

A.    *Commencement of Case*.  On May 28, 2013 (the "Petition Date") each of the Debtors filed a voluntary petition under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Court") commencing these cases (these "Cases").  The Debtors are continuing in the management and operation of their business and properties as debtors in possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in these Cases and the United States Trustee (the "U.S. Trustee") has not yet appointed the official committee of unsecured creditors in these Cases (the "Statutory Committee").

2

B.      *Jurisdiction and Venue*.  This Court has jurisdiction, pursuant to 28 U.S.C. §§ 157(b) and 1334, over these proceedings, and over the persons and property affected hereby. Consideration of the DIP Motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2).  The statutory predicates for the relief sought herein are sections 105, 361, 362, 363, and 364 of the Bankruptcy Code and Rules 2002, 4001 and 9014 of the Bankruptcy Rules and Rules 2002-1(b), 4001-2, 9006-1 and 9013-1 of the Local Rules.  Venue for these Cases and proceedings on the DIP Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

C.      *Findings Regarding Postpetition Financing*.

(i)      *Request for Postpetition Financing*.  Industries seeks authority to (a) enter into a ratification agreement with BFS substantially in the form attached hereto as Exhibit A (the "BFS Ratification Agreement") and a Ratification Agreement with Crossroads substantially in the form attached hereto as Exhibit B (the "Crossroads Ratification Agreement") on the terms described herein and in the DIP Motion, and (b) use cash collateral on the terms described herein to administer these Cases and fund their operations.  At the Final Hearing, the Debtors will seek final approval of the proposed postpetition financing arrangements and use of cash collateral pursuant to a proposed final order (the "Final Order"); notice of the Final Hearing and the Final Order will be provided in accordance with this Interim Order.

(ii)      *Liens and Adequate Protection*.  The BFS DIP Liens, the Crossroads Liens and the Adequate Protection Liens as further described below, will enable the Industries to obtain financing pursuant to the Receivables Facility and the Revolving Credit Facility and to continue to operate Industries' business to the benefit of its estate and creditors.  The Pre-petition Lenders are entitled to receive adequate protection as set forth in this Interim Order until such time as the valid amounts owed by the Borrower to the Pre-Petition Lenders are paid in full, for

3

any diminution in the value of each of their respective interests in the pre-petition cash collateral on account of the Debtors' use of cash collateral and the Debtors' use of the proceeds from the sale of any other Collateral, the Pre-petition Lender shall receive perfected post-petition security interests and liens on the Collateral.

(iii)    *Need for Postpetition Financing and Use of Cash Collateral.*    The Debtors' need to use cash collateral on an interim basis and to obtain credit on an interim basis pursuant to the Receivables Facility and the Revolving Credit Facility is immediate and critical to enable the Debtors to continue operations and to administer and preserve the value of their estates.  The ability of the Debtors to finance their operations, maintain business relationships with their vendors, suppliers and customers, to pay their employees and otherwise finance their operations requires the availability of working capital from the Receivables Facility and the Revolving Credit Facility and the use of cash collateral, the absence of any one of which would immediately and irreparably harm the Debtors, their estates and their creditors, and the possibility for a successful reorganization.  The Debtors do not have sufficient available sources of working capital and financing to operate their businesses or maintain their properties in the ordinary course of business without the Receivables Facility, the Revolving Credit Facility and the authorized use of cash collateral.

(iv)    *No Credit Available on More Favorable Terms.*    Given their current financing arrangements and the Debtors' urgent need for financing, the Debtors would likely be unable to sell receivables to or obtain financing from sources other than BFS and Crossroads on terms more favorable than those terms provided for in the Receivables Facility and the Revolving Credit Facility.  The Debtors have been unable to obtain unsecured credit allowable under Bankruptcy Code Section 364(b)(1) as an administrative expense.

4

D.    *Business Judgment and Good Faith Pursuant to Section 364(e)*.  The terms and conditions of the Receivables Facility and the Revolving Credit Facility and the fees paid and to be paid thereunder are fair, reasonable, and the best available to the Debtors under the circumstances, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and consideration.  The Receivables Facility, the Revolving Credit Facility and the use of cash collateral were negotiated in good faith and at arms' length among Industries, BFS and Crossroads.  Use of cash collateral and credit to be extended under the Receivables Facility and the Revolving Credit Facility shall be deemed to have been so allowed, advanced, made, used or extended in good faith, and for valid business purposes and uses, within the meaning of Section 364(e) of the Bankruptcy Code, and BFS and Crossroads are therefore entitled to the protection and benefits of Section 364(e) of the Bankruptcy Code and this Interim Order.

H.    *Notice*.  Notice of the Interim Hearing and the emergency relief requested in the DIP Motion has been provided by the Debtors, whether by facsimile, email, overnight courier or hand delivery, to the Office of the United States Trustee for the District of Delaware, the Debtors' pre-petition secured lenders and their counsel, if known to the Debtors, the Debtors' twenty (20) largest unsecured creditors on a consolidated basis, and the Debtors' cash management bank.  The Debtors have made reasonable efforts to afford the best notice possible under the circumstances and such notice is good and sufficient to permit the interim relief set forth in this Interim Order.

Based upon the foregoing findings and conclusions, the DIP Motion and the record before the Court with respect to the DIP Motion, and good and sufficient cause appearing therefor,

5

IT IS HEREBY ORDERED that:

1.    <u>Motion Granted</u>.  The DIP Motion is granted on an interim basis in accordance with Bankruptcy Rule 4001(c)(2) to the extent provided herein.

2.    <u>Interim Financing and Use of Cash Collateral Approved</u>.  Industries is hereby authorized and empowered to execute and deliver the BFS Ratification Agreement and the Crossroads Ratification Agreement (the "<u>DIP Documents</u>") together with any other document of any kind required thereunder and immediately to borrow, obtain other loans, and incur indebtedness and obligations pursuant to the terms and conditions of this Interim Order, the BFS Ratification Agreement and the Crossroads Ratification Agreement.  The use of cash collateral on an interim basis is authorized, subject to the terms and conditions set forth in this Interim Order.

3.    <u>Objections Overruled</u>.  All objections to the interim relief sought in the DIP Motion to the extent not withdrawn or resolved are hereby overruled.

**<u>Receivables Facility and Revolving Credit Facility Authorization</u>**

4.    <u>Authorization of the DIP Financing</u>.  The Receivables Facility and the Revolving Credit Facility are hereby approved.  Industries is hereby authorized to pay, in accordance with this Interim Order, the principal, interest, fees and other amounts described in the DIP Documents as such become due and without need to obtain further Court approval.  Industries is further authorized to irrevocably sell "Accounts" (as such term is defined by the Uniform Commercial Code in effect in Delaware) to BFS.  Upon execution and delivery, the DIP Documents shall represent valid and binding obligations of Industries, enforceable against Industries and its estate in accordance with their terms.

6

5.    <u>Payments and Sale of Receivables</u>.  Industries is authorized and directed to: (a) make all payments and transfers (including the irrevocable sale of Accounts) to BFS as required in the BFS Ratification Agreement; and (b) make all payments and transfers to Crossroads as required in the Crossroads Ratification Agreement.

6.    <u>Continuation of Pre-petition Practices</u>.  All pre-petition practices and procedures for the payment and collection of proceeds (including the collection of Accounts (as defined in the BFS Ratification Agreement)) and funding pursuant to the Existing Sale Agreement and the Loan Agreement are hereby approved, and shall continue without interruption or break in continuity.

7.    <u>Postpetition Liens and Superpriority Claims</u>.

(a)    <u>BFS DIP Liens and Superpriority Claim</u>.  Effective immediately upon entry of this Interim Order, all post-petition obligations of Industries under the Receivables Facility shall, subject to the Carve Out (as defined below), at all times: (i) pursuant to section 364(c)(1) of the Bankruptcy Code, be entitled to super-priority claim status in the chapter 11 cases (the "<u>BFS Superpriority Claim</u>"); and (ii) pursuant to section 364(c)(2) and (c)(3) of the Bankruptcy Code, be secured by perfected liens (the "<u>BFS DIP Liens</u>") on substantially all of the Industries' assets (other than claims or causes of action arising under sections 544, 545, 547, 548, 550 or 553 of the Bankruptcy Code (collectively, the "<u>Avoidance Actions</u>")) (the "<u>Collateral</u>").  BFS shall also irrevocably acquire title to all post-petition Accounts purchased by BFS pursuant to the Existing Sale Agreement (as modified by the BFS Ratification Agreement).  The BFS DIP Liens shall not prime any valid, properly perfected and non-avoidable liens on the Collateral in existence as of the Petition Date, and the BFS DIP Liens shall be subject to the Carve Out.  The BFS DIP Liens

7

shall be *pari passu* with the Crossroads DIP Liens (as defined below) and the Adequate Protection Liens; provided, however, neither Crossroads nor the holders of any Adequate Protection Liens shall have any liens in Accounts generated by Industries until BFS is indefeasibly paid in full after BFS announces its intent not to purchase additional Accounts. The BFS Superpriority Claim shall be otherwise *pari passu* with the Crossroads Superpriority Claim (as defined below) and shall not attach to or be paid from the Avoidance Actions or any proceeds thereof. BFS shall have an exclusive claim to all Accounts purchased under the Receivables Purchasing Facility as the purchaser of such Accounts. No other party whatsoever shall be granted a lien on such Accounts prior to the sale of such Accounts to BFS, and no previously existing liens shall attach to such Accounts or follow them upon their sale. All Accounts sold to BFS shall be free and clear of any and all extant and applicable liens.

(b)     Crossroads DIP Liens and Superpriority Claim. Effective immediately upon entry of this Interim Order, all post-petition obligations of Industries under the Revolving Credit Facility shall, subject to the Carve Out (as defined below), at all times: (i) pursuant to section 364(c)(1) of the Bankruptcy Code, be entitled to super-priority claim status in the chapter 11 cases (the "Crossroads Superpriority Claim"); and (ii) pursuant to section 364(c)(2) and (c)(3) of the Bankruptcy Code, be secured by perfected liens (the "Crossroads DIP Liens") on the Collateral. The Crossroads DIP Liens shall not prime any valid, properly perfected and non-avoidable liens on the Collateral in existence on the Petition Date, and the Crossroads DIP Liens shall be subject to the Carve Out. The Crossroads DIP Liens shall be *pari passu* with the BFS DIP Liens and the Adequate Protection Liens, except Crossroads shall have a senior lien on postpetition inventory to the extent of its

8

unpaid postpetition loans.  The Crossroads Superpriority Claim shall be *pari passu* with the BFS Superpriority Claim and shall not attach to or be paid from the Avoidance Actions or any proceeds thereof.  Crossroads shall have no claim whatsoever, the preceding sentences notwithstanding, on Accounts sold to BFS pursuant to the Receivables Purchasing Facility.

8.      <u>Automatic Stay</u>.  Pursuant to the Crossroads Ratification Agreement, prior to exercising any rights and remedies upon an Event of Default, Crossroads must first obtain relief from the automatic stay imposed by section 362 of the Bankruptcy Code.

9.      <u>Automatic Stay Inapplicable to Purchased Accounts</u>.  The parties hereto acknowledge and agree that all Accounts purchased by BFS under the Existing Sale Agreement are purchased outright (free and clear of all liens and encumbrances), with the result that title to such Accounts is irrevocably transferred to BFS.  Any treatment of such sales as post-petition secured financings in any Ratification Agreement is made purely out of an abundance of caution.  Any agreement in theory by BFS to the terms and provisions of an agreed Court order (such as this one) treating the purchase of the Accounts as a financing is entered into only out of an abundance of caution, in case of the unlikely event that purchases of Accounts are deemed secured financings of same.  As such, BFS shall have the full ability to collect on such purchased Accounts without obtaining relief from the automatic stay.

10.     <u>Use of Proceeds; Repayment of Prepetition Revolving Loan Debt</u>.  From and after the entry of the Interim Order, Industries shall use advances under the Receivables Facility and the Revolving Credit Facility to provide for the working capital requirements and other general corporate purposes of Industries during the pendency of its chapter 11 cases.

RLF1-3388956-6
DMSLIBRARY01:20960610.10

**Authorization to Use Cash Collateral**

11.    Authorization to Use Cash Collateral.  Subject to the terms and conditions of this Interim Order, the Debtors are authorized to use cash collateral of the Pre-petition Lenders until the earlier of the earlier of: (i) the date that is 45 days after the Petition date; or (ii) the date the Court enters a final order granting this Motion.  Nothing in this Interim Order shall authorize the disposition of any assets of the Debtors or their estate outside the ordinary course of business, or the Debtors' use of any cash collateral, except as permitted in this Interim Order.

12.    Adequate Protection.  As adequate protection of the interests of the Pre-petition Lenders in the pre-petition cash collateral against any diminution in value of such interests on account of the Debtors' use of cash collateral and the Debtors' use of the proceeds from the sale of any other Collateral, the Pre-petition Lenders shall receive perfected post-petition security interests and liens on the Collateral (the "Adequate Protection Liens") to the extent of any such diminution in value; provided, however, no Pre-petition Lender, other than BFS, shall be entitled to any interest in any Accounts Purchased (as that term is defined in the Receivables Sale Agreement) until BFS is indefeasibly paid in full after BFS announces its intent not to purchase additional Accounts.  The Adequate Protection Liens shall be junior only to: (a) any valid, perfected and non-avoidable liens on the Collateral in existence on the Petition Date; (b) the Carve Out; (c) the Crossroads DIP Liens on postpetition inventory for their postpetition loans.  In all other respects, the Adequate Protection Liens shall be *pari passu* with the BFS DIP Liens and the Crossroads DIP Liens, except that no Adequate Protection Lien may encumber or cover the Accounts of Industries, either before or after such Accounts are sold to BFS pursuant to the Receivables Purchasing Agreement, until BFS is indefeasibly paid in full after BFS announces its intent not to purchase additional Accounts.  As further adequate protection against the

10

diminution in value described above, the Pre-petition Lenders will be provided, to the extent of any diminution in value, an administrative expense claim pursuant to Section 507(b) of the Bankruptcy Code (the "Adequate Protection Claim").  The Adequate Protection Claim shall be junior to the Crossroads Superpriority Claim, the BFS Superpriority Claim and the Carve Out and shall not attach to or be paid from the Avoidance Actions or any proceeds thereof.  The Adequate Protection Liens and Adequate Protection Claims granted hereunder shall be held by the Pre-petition Lenders in the priority order maintained by them as of the Petition Date in the cash collateral used. In no event, shall the aggregate amount of the Adequate Protection Claims and the Adequate Protection Liens exceed the actual cash collateral used.  Further no Pre-petition Lender shall have an Adequate Protection Claim or Adequate Protection Lien unless it has a valid an unavoidable lien in the cash collateral used by the Debtors.

13.   Carve Out.  The BFS DIP Liens, the Crossroads DIP Liens, the Adequate Protection Liens, the BFS Superpriority Claim, the Crossroads Superpriority Claim and the Adequate Protection Priority Claim shall all be subject to and subordinate to a Carve Out (the "Carve Out") for: (i) statutory fees payable to the U.S. Trustee pursuant to 28 U.S.C. § 1930(a)(6); and (ii) the unpaid and outstanding reasonable fees and expenses incurred on or after the Petition Date, and approved or otherwise authorized by an order of the court pursuant to sections 326, 328, 330, or 331 of the Bankruptcy Code, by the Debtors' attorneys retained with court approval by the Debtors in a cumulative amount not to exceed $100,000.  The preceding sentence notwithstanding, under no circumstances shall any individual professional or professional firm other than King & Spalding LLP or the Debtors' Delaware bankruptcy counsel benefit from the provisions relating to "Carve Out" in this Interim Order.

11

14.  <u>Release of Accounts</u>.  CB&T is directed to permit the Debtors to access the funds currently held in the Debtors' operating account and any other of the Debtors' accounts with CB&T.  Notwithstanding anything contained herein to the contrary or in the order authorizing payment of prepetition wages and subject to further order of the Court, Industries may not access any of its funds that were, as of the Petition Date, subject to a writ of garnishment served by Terex Financial Services, Inc. on CB&T.

15.  <u>Intercreditor Agreement</u>.  The terms and provisions of Paragraphs 7(a) and 7(b) of this Interim Order notwithstanding, nothing in this Interim Order shall change or modify, or is intended to change or modify, the terms of that certain Intercreditor Agreement dated February 29, 2012 by and between Crossroads and BFS, and the terms and provisions of such Agreement are hereby incorporated by reference and shall continue in effect between the two parties thereto unless a change thereto is made in writing (the text of this order having been agreed to in advance by BFS and Crossroads, and therefore having the effect of a contractual reaffirmation of the Intercreditor Agreement by and between those two parties).

16.  <u>No Transfers</u>.  Industries shall not transfer any funds advanced by BFS or Crossroads to MFMD without the prior written consent of BFS or Crossroads, as applicable.

17.  <u>Conversion to Chapter 7</u>.  The BFS DIP Liens, the Crossroads DIP liens, and the Adequate Protection Liens, as well as the priority in recourse to the relevant collateral that they create, shall all be valid and enforceable against any trustee appointed in these Cases, upon the conversion of any of these Cases to a case under Chapter 7 of the Bankruptcy Code, and/or upon the dismissal of any of these Cases.

**<u>Provisions Common to DIP Financing</u>**
**<u>and Use of Cash Collateral Authorizations</u>**

12

18.    <u>Amendments</u>.  The Debtors are hereby authorized, without further notice, motion, application to, order of, or hearing before, this Court, to enter into agreements with the BFS or Crossroads providing for any non-material modifications to DIP Documents or of any other modifications to the DIP Documents necessary to conform the DIP Documents to this Interim Order; *provided, however*, that notice of any modification or amendment to the DIP Documents shall be provided to counsel for any Statutory Committee, counsel to the U.S. Trustee, BFS, Crossroads, and any entity whose rights are affected by the modification, each of whom shall have five (5) business days from the date of such notice within which to object in writing to such modification or amendment to the extent that such modification or amendment is material.  If a Statutory Committee, the U.S. Trustee or an affected entity timely objects to any material modification or amendment to the DIP Documents, then such modification or amendment shall only be permitted pursuant to order of this Court.  All material modifications shall be filed with the Bankruptcy Court.

19.    <u>Perfection of BFS DIP Liens, Crossroads DIP Liens and Adequate Protection Liens</u>.  This Interim Order shall be sufficient and conclusive evidence of the validity, perfection, and priority of all liens granted herein including the BFS DIP Liens, the Crossroads DIP Liens, and the Adequate Protection Liens, without the necessity of filing or recording any financing statement, mortgage, notice, or other instrument or document which may otherwise be required under the law or regulation of any jurisdiction or the taking of any other action to validate or perfect (in accordance with applicable non-bankruptcy law) the BFS DIP Liens, the Crossroads DIP Liens and the Adequate Protection Liens, or to entitle BFS, Crossroads or the Prepetition Lenders to the priorities granted herein.  BFS, Crossroads, and the Pre-petition Lenders, each in its discretion, may file a photocopy of this Interim Order as a financing statement with any filing

13

or recording office or with any registry of deeds or similar office, in addition to or in lieu of such financing statements, notice of lien or similar instrument.

20.    <u>Good Faith Under Section 364(e) of the Bankruptcy Code; No Modification or Stay of this Interim Order</u>.  BFS and Crossroads have acted in good faith in connection with this Interim Order and their reliance on this Interim Order is in good faith.  Based on the findings set forth in this Interim Order and the record made during the Interim Hearing, and in accordance with Section 364(e) of the Bankruptcy Code, in the event any or all of the provisions of this Interim Order are hereafter modified, amended or vacated by a subsequent order of this Court or any other court, BFS and Crossroads are entitled to the protections provided in Section 364(e) of the Bankruptcy Code.  Any such modification, amendment or vacatur shall not affect the validity and enforceability of any advances previously made or made hereunder, or lien, claim or priority authorized or created hereby.  Any liens or claims granted to BFS, Crossroads or the Pre-petition Lenders hereunder arising prior to the effective date of any such modification, amendment or vacatur of this Interim Order shall be governed in all respects by the original provisions of this Interim Order, including entitlement to all rights, remedies, privileges and benefits granted herein.

21.    <u>Other Expenses</u>.  The Debtors are authorized to pay any fees provided for in the DIP Documents.

22.    <u>No Third Party Rights</u>.  Except as explicitly provided for herein, this Interim Order does not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect, or incidental beneficiary.

23.    <u>Binding Effect of Interim Order</u>.  Immediately upon execution by this Court, the terms and provisions of this Interim Order shall become valid and binding.

14

24.    <u>Interim Order Controls</u>.  In the event of any inconsistency between the terms and conditions of the DIP Documents and this Interim Order, the provisions of this Interim Order shall govern and control.

25.    <u>Survival</u>.  The provisions of this Interim Order and any actions taken pursuant hereto shall survive entry of any order which may be entered: (a) confirming any plan of reorganization in these Cases; or (b) converting any of these Cases to a case under Chapter 7 of the Bankruptcy Code.

26.    <u>Final Hearing</u>.  The Final Hearing to consider entry of the Final Order and final approval of the DIP Facility is scheduled for June 25, 2013 at 10:00 a.m. before the Honorable Peter J. Walsh, United States Bankruptcy Judge, on the 6th floor, in Courtroom 2, at the United States Bankruptcy Court for the District of Delaware. On or before May 31, 2013, the Debtors shall serve, by United States mail, first-class postage prepaid, notice of the entry of this Interim Order and of the Final Hearing (the "<u>Final Hearing Notice</u>"), together with copies of this Interim Order and the DIP Motion, on: (a) the parties having been given notice of the Interim Hearing; (b) any party that has filed prior to such date a request for notices with this Court; (c) counsel for the Statutory Committee, if appointed by such date; and (d) the Internal Revenue Service.  The Final Hearing Notice shall state that any party in interest objecting to the entry of the proposed Final Order shall file written objections with the Clerk of the Court no later than on June 18, 2013 at 4:00 p.m. (Eastern Daylight Time), which objections shall be served so as to be received on or before such date by: (i) counsel to the Debtors: Frederick B. Rosner, the Rosner Law Group, 824 N. Market Street, Suite 810, Wilmington, Delaware 19801; (ii) counsel to the Statutory Committee, if any; and (iv); the Office of the United States Trustee for the District of

15

Delaware, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801, attn: Mark Kenney.

      27.   <u>Retention of Jurisdiction</u>.  The Court has and will retain jurisdiction to enforce this Interim Order according to its terms.


      SO ORDERED by the Court this 29th day of May 2013.


                                   _____
                                   THE HONORABLE PETER J. WALSH
                                   UNITED STATES BANKRUPTCY JUDGE

RLF1-3388956-6
DMSLIBRARY01:20960610.10

## EXHIBIT A

**BFS Ratification Agreement**

## EXHIBIT B

**Crossroads Ratification Agreement**