# EXHIBIT A

**BFS Ratification Agreement**

## RATIFICATION AGREEMENT

THIS RATIFICATION AGREEMENT (this "Ratification Agreement") dated as of May __, 2013, by and among MFM Industries, Inc., a Delaware corporation ("Debtor"), and Bibby Financial Services (Midwest), Inc. (hereinafter referred to as "BFS").

### WITNESSETH:

WHEREAS, Debtor has commenced a case under Chapter 11 of Title 11 of the United States Code in the United States Bankruptcy Court for the District of Delaware (together with the jointly-administered proceedings of its parent company, MFM Delaware, Inc., Case Number 13-11359), and the Debtor has retained possession of its assets and is authorized under the Bankruptcy Code to continue the operation of its businesses as debtor-in-possession;

WHEREAS, prior to the commencement of the Chapter 11 Cases (as hereinafter defined), BFS made advances to the Debtor pursuant to that certain Master Purchase and Sale Agreement between BFS and Industries, dated November 14, 2011, a copy of which is attached hereto as Exhibit 1 (together with any related documents executed by the Debtor and BFS pursuant thereto, the "Existing Sale Agreement");

WHEREAS, business dealings between BFS and Crossroads (defined below) are governed by the Intercreditor Agreement, also defined below, a copy of which is attached hereto as Exhibit 2;

WHEREAS, the Bankruptcy Court (as hereinafter defined) has entered a Financing Order (as hereinafter defined) pursuant to which BFS may make certain post-petition financial accommodations to the Debtor;

WHEREAS, the effectiveness of this Ratification Agreement is subject to entry of the Financing Order by the Bankruptcy Court;

WHEREAS, the Debtor and BFS desire to reaffirm and ratify their obligations pursuant to the Existing Sale Agreement, as modified herein, and BFS wishes, in connection herewith, to reaffirm and ratify the Intercreditor Agreement with Crossroads; and

NOW, THEREFORE, in consideration of the foregoing, the mutual covenants and agreements contained herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, BFS and the Debtor mutually covenant, warrant and agree as follows:

1. DEFINITIONS

    1.1. Additional Definitions. As used herein, the following terms shall have the meanings given to them below and the Existing Sale Agreement shall be deemed and is hereby amended to include each of the following definitions:

        (a) "Accounts" or "Account" shall have the meaning ascribed to such term by the Uniform Commercial Code in effect in the State of Delaware.

DMSLIBRARY01:20960538.9

(b) "Adequate Protection Liens" shall have the meaning ascribed to it in the Financing Order.

(c) "Bankruptcy Code" shall mean the United States Bankruptcy Code, being Title 11 of the United States Code as enacted in 1978, as the same has heretofore been or may hereafter be amended, recodified, modified or supplemented, together with all rules, regulations and interpretations thereunder or related thereto.

(d) "Bankruptcy Court" shall mean the United States Bankruptcy Court or the United States District Court for the District of Delaware.

(e) "Carve Out" shall mean: (i) statutory fees payable by the Debtors to the U.S. Trustee pursuant to 28 U.S.C. § 1930(a)(6); and (ii) the unpaid and outstanding reasonable fees and expenses incurred on or after the Petition Date, and approved or otherwise authorized by an order of the court pursuant to sections 326, 328, 330, or 331 of the Bankruptcy Code, by the Debtors' attorneys retained with court approval by the Debtor in a cumulative amount not to exceed $100,000. The preceding sentence notwithstanding, under no circumstances shall any individual professional or professional firm, other than King & Spalding LLP and the Debtor's Delaware bankruptcy counsel, benefit from the provisions relating to "Carve Out" in this Ratification Agreement.

(f) "Chapter 11 Cases" shall mean the Chapter 11 cases of the Debtors which are being jointly administered under the Bankruptcy Code and are pending in the Bankruptcy Court.

(g) "Crossroads" shall mean Crossroads Financial, LLC.

(h) "Crossroads Superpriority Claim" shall mean any superpriority claim granted to Crossroads pursuant to the Financing Order.

(i) "Final Financing Order" shall mean a final order entered by the Bankruptcy Court in the Chapter 11 Cases authorizing this Ratification Agreement.

(j) "Financing Order" shall mean the Interim Financing Order, the Final Financing Order and such other orders relating thereto or authorizing the granting of credit by BFS to the Debtor on an emergency, interim or permanent basis pursuant to Section 364 of the Bankruptcy Code as may be issued or entered by the Bankruptcy Court in the Chapter 11 Cases.

(k) "Intercreditor Agreement" shall have the meaning set forth in <u>Section 2.6</u>.

(l) "Interim Financing Order" shall mean an interim order entered by the Bankruptcy Court in the Chapter 11 Cases authorizing this Ratification Agreement.

(m) "Petition Date" shall mean the date of the commencement of the Chapter 11 Cases.

1.2. <u>Interpretation</u>.

(a) For purposes of this Ratification Agreement, unless otherwise defined or amended herein, including, but not limited to, those terms used and/or defined in the recitals hereto, all terms used herein shall have the respective meanings assigned to such terms in the Existing Sale Agreement.

(b) All references to any term in the singular shall include the plural and all references to any term in the plural shall include the singular.

2. ADOPTION, MODIFICATION, RATIFICATION, AND WAIVER

2.1. <u>Ratification</u>. BFS and the Debtor hereby ratify, assume, adopt and agree to be bound by the Existing Sale Agreement, except as expressly modified by this Ratification Agreement and as modified by the Financing Order. BFS hereby ratifies and assumes its obligations under the Intercreditor Agreement, provided that Crossroads also ratifies and assumes such agreement, as written, and without modifications unless agreed to in writing.

2.2. <u>Modification of Minimum Sales</u>. "Minimum Sales", as used in the Existing Sale Agreement, shall be modified to mean that Seller must offer BFS for sale at least $1,200,000.00 per month in Accounts.

2.3. <u>Modification of Advance Rate</u>. "Advance Rate", as used in the Existing Sale Agreement, shall be modified to mean an amount up to 70% of the Aggregate Net Face Value of Accounts identified in each Assignment Schedule delivered to BFS.

2.4. <u>Modification of Events of Default</u>. Section 5.1 of the Existing Loan Agreement is hereby modified such that the provisions (b), (c), (d), (e), (g), (j) and (l) are each deleted in their entirety and replaced with the following: "[Intentionally Omitted]".

2.5. <u>Waiver</u>. BFS hereby waives any default or Event of Default under the Existing Sale Agreement existing as of the Petition Date, including, without limitation, any Event of Default resulting from: (1) the Debtors' filing of the Chapter 11 Cases; (2) the financial condition of the Debtors; (3) any pre-petition lien, garnishment or attachment that was filed, occurred, arose, or attached to the Debtors' assets; (4) any judgment entered against any of the Debtors, including the judgment obtained by Terex Financial Services, Inc.; and (5) any material adverse change in either of the Debtors' business or operations. BFS also hereby waives any default or Event of Default under the Existing Sale Agreement resulting from any liens provided pursuant to the Financing Order. Notwithstanding the foregoing, BFS is not waiving the defaults set forth in this section 2.5 to the extent that BFS is in litigation with a third party that claims an interest senior to BFS in the Debtor's Accounts or any other Collateral. This waiver does not affect or destroy any BFS property interest or cause of action, except that no cause of action may be brought against either of the jointly-administered debtors, including the Debtor, in connection with an event of default above waived.

2.6. <u>Priority and Liens</u>: All post-petition obligations of the Debtor herein shall, subject to the Carve Out, at all times: (i) pursuant to section 364(c)(1) of the Bankruptcy Code, be entitled to super-priority claim status in the chapter 11 cases (the "<u>BFS Superpriority Claim</u>");

and (ii) pursuant to section 364(c)(2) and (c)(3) of the Bankruptcy Code, be secured by perfected liens (the "BFS DIP Liens") on substantially all of the Debtor's assets (other than claims or causes of action arising under sections 544, 545, 547, 548, 550 or 553 of the Bankruptcy Code (collectively, the "Avoidance Actions")) (the "Collateral"). The BFS DIP Liens shall not prime any valid, perfected and non-avoidable liens on the Collateral in existence as of the Petition Date, and the BFS DIP Liens shall be subject to the Carve Out. The BFS DIP Liens shall be *pari passu* with the Crossroads DIP Liens and the Adequate Protection Liens, except BFS DIP Liens shall be junior to the liens on postpetition inventory of the Debtor that Crossroads is granted pursuant to the Financing Order for the unpaid amount of Crossroad's postpetition loans to the Debtor. The BFS Superpriority Claim shall be *pari passu* with the Crossroads Superpriority Claim and shall not attach to or be paid from the Avoidance Actions or any proceeds thereof. Until BFS is indefeasibly paid in full for all amounts owed to it hereunder and BFS announces its intent not to purchase additional Accounts, neither the Crossroads DIP liens nor the Adequate Protection Liens shall attach to any Account purchased by BFS hereunder. Reference is hereby made to that certain Intercreditor Agreement dated February 29, 2012 by and between BFS and Crossroads (the "Intercreditor Agreement"). Nothing in this Section 2.6 shall change or modify the provisions of the Intercreditor Agreement, or be deemed an acceptance of such a change by BFS. More specifically, Debtor shall make no agreement with Crossroads, and take no other action, that would have the effect of continuing the lien of Crossroads in the "proceeds" of Inventory once the Inventory is sold and a related "Account" is created and then purchased by BFS.

    2.7.   Consent to Use Cash Collateral. BFS consents to the Debtor's use of cash collateral of BFS on the terms set forth in the Financing Order and consistent in all material respects with this Ratification Agreement and with the Intercreditor Agreement.

    2.8.   Automatic Stay Inapplicable to Purchased Accounts. The parties hereto acknowledge and agree that all Accounts purchased by BFS under the Existing Sale Agreement are purchased outright (free and clear of all liens and encumbrances), with the result that title to such Accounts is irrevocably transferred to BFS. Any treatment of such sales as post-petition secured financings in this Ratification Agreement is made purely out of an abundance of caution. Any agreement by BFS to the terms and provisions of an agreed Bankruptcy Court order treating the purchase of the Accounts as a financing is similarly entered into only out of an abundance of caution, in case of the unlikely event that purchases of Accounts are deemed secured financings of same. As such, BFS shall have the full ability to collect on such purchased Accounts without obtaining relief from the automatic stay.

3.    ADDITIONAL REPRESENTATIONS, WARRANTIES AND COVENANTS

In addition to the continuing representations, warranties and covenants heretofore and hereafter made by Debtor to BFS, whether pursuant to the Existing Sale Agreement or otherwise, Debtor hereby represents, warrants and covenants to BFS the following (which shall survive the execution and delivery of this Ratification Agreement):

    3.1.   Financing Order. The Financing Order has been duly entered, is valid, subsisting and continuing and has not been vacated, modified, reversed on appeal, or vacated or modified

by any order of the Bankruptcy Court (other than as consented to by BFS) and is not subject to any pending appeal or stay.

    3.2. <u>Use of Proceeds</u>. All Advances provided by BFS to the Debtor pursuant to the Financing Order, the Existing Sale Agreement or otherwise, shall be used by Debtor in accordance with the Financing Order.

4.     NOTICES

    The Existing Sale Agreement is hereby amended by adding that any notices, requests and demands to the Debtor must also be sent to:

Arthur J. Steinberg. Esq.
KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York 10036
Telephone: (212) 556-2100
Facsimile: (212) 556-2222

5.     MISCELLANEOUS

    5.1. <u>Amendments and Waivers</u>. This Ratification Agreement may not be changed, waived, discharged or terminated orally, but only by an instrument in writing signed by the party against whom enforcement of the change, waiver, discharge or termination is sought.

    5.2. <u>Further Assurances</u>. Debtor shall, at its expense, duly execute and deliver, or shall cause to be duly executed and delivered, such further agreements, instruments and documents in connection with this Ratification Agreement as may be reasonably requested by BFS.

    5.3. <u>Headings</u>. The headings used herein are for convenience only and do not constitute matters to be considered in interpreting this Ratification Agreement.

    5.4. <u>Counterparts</u>. This Ratification Agreement may be executed in any number of counterparts, each of which shall be deemed to be an original, but all of which shall together constitute one and the same agreement. In making proof of this Ratification Agreement, it shall not be necessary to produce or account for more than one counterpart thereof signed by each of the parties hereto. Delivery of an executed counterpart of this Ratification Agreement by telefacsimile shall have the same force and effect as delivery of an original executed counterpart of this Ratification Agreement. Any party delivering an executed counterpart of this Ratification Agreement by telefacsimile also shall deliver an original executed counterpart of this Ratification Agreement, but the failure to deliver an original executed counterpart shall not affect the validity, enforceability, and binding effect of this Ratification Agreement as to such party or any other party.

    5.5. <u>Additional Events of Default</u>. The parties hereto acknowledge, confirm and agree that the failure of the Debtor or BFS to comply with any of the covenants, conditions and agreements contained herein shall constitute an Event of Default under the Existing Sale Agreement.

DMSLIBRARY01:20960538.9

IN WITNESS WHEREOF, the parties hereto have caused this Ratification Agreement to be duly executed as of the day and year first above written.

        MFM INDUSTRIES, INC.

        By: _____
            Matthew A. Crane
            President & CEO

BIBBY FINANCIAL SERVICES (MIDWEST), INC.

By: _____

Name: _____

Title: _____

## EXHIBIT 2
## Intercreditor Agreement

# EXHIBIT B

**Crossroads Ratification Agreement**

## RATIFICATION AGREEMENT

THIS RATIFICATION AGREEMENT (this "Ratification Agreement") dated as of May __, 2013, by and among MFM Industries, Inc., a Delaware corporation (the "Debtor"), and Crossroads Financial, LLC ("Crossroads").

### WITNESSETH:

WHEREAS, Debtor has commenced a case under Chapter 11 of Title 11 of the United States Code in the United States Bankruptcy Court for the District of Delaware (together with the jointly-administered proceedings of its parent company, MFM Delaware, Inc., Case Number 13-11359), and the Debtor has retained possession of its assets and is authorized under the Bankruptcy Code to continue the operation of its businesses as debtor-in-possession;

WHEREAS, prior to the commencement of the Chapter 11 Cases (as hereinafter defined), Crossroads made certain financing accommodations available to the Debtors pursuant to that certain Loan and Security Agreement by and between Crossroads and Industries, dated February 29, 2012, a copy of which is attached hereto as Exhibit 1 (together with any related documents executed by the Debtors and Crossroads pursuant thereto, the "Existing Loan Agreement");

WHEREAS, business dealings between Crossroads and BFS (defined below) are governed by the Intercreditor Agreement, also defined below, a copy of which is attached hereto as Exhibit 2;

WHEREAS, the Bankruptcy Court (as hereinafter defined) has entered a Financing Order (as hereinafter defined) pursuant to which Crossroads may make certain post-petition financial accommodations to the Debtor;

WHEREAS, the effectiveness of this Ratification Agreement is subject to the entry of the Financing Order by the Bankruptcy Court;

WHEREAS, the Debtor and Crossroads desire to reaffirm and ratify their obligations pursuant to the Existing Loan Agreement, as modified herein, and Crossroads wishes, in connection herewith, to reaffirm and ratify the Intercreditor Agreement with BFS; and

NOW, THEREFORE, in consideration of the foregoing, the mutual covenants and agreements contained herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Crossroads and the Debtor mutually covenant, warrant and agree as follows:

1. DEFINITIONS

    1.1. Additional Definitions. As used herein, the following terms shall have the meanings given to them below and the Existing Loan Agreement shall be deemed and is hereby amended to include each of the following definitions:

    (a) "Account" or "Accounts" shall have the meaning ascribed to such terms by the Uniform Commercial Code in effect in the State of Delaware.

(b) "Adequate Protection Liens" shall have the meaning ascribed to it in the Financing Order.

(c) "Bankruptcy Code" shall mean the United States Bankruptcy Code, being Title 11 of the United States Code as enacted in 1978, as the same has heretofore been or may hereafter be amended, recodified, modified or supplemented, together with all rules, regulations and interpretations thereunder or related thereto.

(d) "Bankruptcy Court" shall mean the United States Bankruptcy Court or the United States District Court for the District of Delaware.

(e) "BFS" shall mean Bibby Financial Services (Midwest), Inc.

(f) "BFS DIP Liens" shall mean any post-petition liens granted to BFS in the Financing Order pursuant to section 364(c) of the Bankruptcy Code.

(g) "BFS Superpriority Claim" shall mean any superpriority claim granted to BFS pursuant to the Financing Order.

(h) "Carve Out" shall mean: (i) statutory fees payable by the Debtors to the U.S. Trustee pursuant to 28 U.S.C. § 1930(a)(6); and (ii) the unpaid and outstanding reasonable fees and expenses incurred on or after the Petition Date, and approved or otherwise authorized by an order of the court pursuant to sections 326, 328, 330, or 331 of the Bankruptcy Code, by the Debtors' attorneys retained with court approval by the Debtor in a cumulative amount not to exceed $100,000. The preceding sentence notwithstanding, under no circumstances shall any individual professional or professional firm, other than King & Spalding LLP and the Debtor's Delaware bankruptcy counsel benefit from the provisions relating to "Carve Out" in this Ratification Agreement.

(i) "Chapter 11 Cases" shall mean the Chapter 11 cases of the Debtors which are being jointly administered under the Bankruptcy Code and are pending in the Bankruptcy Court.

(j) "Existing Sales Agreement" shall refer to the "Master Purchase and Sale Agreement between BFS and Industries dated November 14, 2011.

(k) "Final Financing Order" shall mean a final order entered by the Bankruptcy Court in the Chapter 11 Cases authorizing this Ratification Agreement.

(l) "Financing Order" shall mean the Interim Financing Order, the Final Financing Order and such other orders relating thereto or authorizing the granting of credit by Crossroads to the Debtor on an emergency, interim or permanent basis pursuant to Section 364 of the Bankruptcy Code as may be issued or entered by the Bankruptcy Court in the Chapter 11 Cases.

(m) "Intercreditor Agreement" shall have the meaning set forth in Section 2.6. The document is also attached at <u>Exhibit 2</u>.

(n) "Interim Financing Order" shall mean an interim order entered by the Bankruptcy Court in the Chapter 11 Cases authorizing this Ratification Agreement.

(o) "Petition Date" shall mean the date of the commencement of the Chapter 11 Cases.

1.2. Interpretation.

(a) For purposes of this Ratification Agreement, unless otherwise defined or amended herein, including, but not limited to, those terms used and/or defined in the recitals hereto, all terms used herein shall have the respective meanings assigned to such terms in the Existing Loan Agreement.

(b) All references to any term in the singular shall include the plural and all references to any term in the plural shall include the singular.

2. ADOPTION, MODIFICATION, RATIFICATION, AND WAIVER

2.1. Ratification. Crossroads and the Debtor hereby ratify, assume, adopt and agree to be bound by the Existing Loan Agreement, except as expressly modified by this Ratification Agreement and as modified by the Financing Order. Crossroads hereby ratifies and assumes its obligations under the Intercreditor Agreement, provided that BFS also ratify and assume such agreement, as written, and without modifications unless agreed in writing.

2.2. Modification of Termination Rights. Section 18.2(ii) of the Existing Loan Agreement is hereby deleted in its entirety and replaced with the following: "Lender has given Borrower at least twenty-one (21) days' prior written notice".

2.3. Modification of Events of Default. Section 12 of the Existing Loan Agreement is hereby modified such that the provisions numbered as "12.2", "12.3", "12.5", "12.7", "12.8", "12.9", "12.10", "12.11", "12.12", "12.3", are each deleted in their entirety and replaced with the following: "[Intentionally Omitted]".

2.4. Waiver. Crossroads hereby waives any default or Event of Default under the Existing Loan Agreement existing as of the Petition Date, including, without limitation, any Event of Default resulting from: (1) the Debtors' filing of the Chapter 11 Cases; (2) any default under the Factoring Documents; and (3) any default of any Guarantor. Crossroads also hereby waives any default or Event of Default under the Existing Loan Agreement resulting from any liens granted pursuant to the Financing Order. Notwithstanding the foregoing, Crossroads is not waiving the defaults set forth in this section 2.4 to the extent that Crossroads is in litigation with a third party that claims an interest senior to Crossroads in the Debtor's Accounts or any other Collateral. This waiver does not affect or destroy any Crossroads property interest or cause of action, except that no cause of action may be brought against either of the jointly-administered debtors, including the Debtor, in connection with an event of default above waived.

2.5. Priority and Liens: All post-petition obligations of the Debtor herein shall, subject to the Carve Out, at all times: (i) pursuant to section 364(c)(1) of the Bankruptcy Code, be entitled to super-priority claim status in the chapter 11 cases (the "Crossroads Superpriority

Claim"); and (ii) pursuant to section 364(c)(2) and (c)(3) of the Bankruptcy Code, be secured by perfected liens (the "Crossroads DIP Liens") on substantially all of the Debtor's assets (other than claims or causes of action arising under sections 544, 545, 547, 548, 550 or 553 of the Bankruptcy Code (collectively, the "Avoidance Actions")) (the "Collateral"). The Crossroads DIP Liens shall not prime any valid, properly, perfected and non-avoidable liens on the Collateral in existence on the Petition Date, and the Crossroads DIP Liens shall be subject to the Carve Out. The Crossroads DIP Liens shall be *pari passu* with the BFS DIP Liens, except Crossroads shall have a senior lien in the Debtor's postpetition inventory for the amount of its unpaid postpetition loans. Until BFS is indefeasibly paid in full for all amounts owed to it by the Debtor and BFS announces its intent not to purchase additional Accounts, Crossroads will not have a lien on any "Account" of the Debtor or proceeds of Inventory that later becomes an Account or the basis for the creation of an Account, whether sold to BFS or otherwise, unless so allowed by the Intercreditor Agreement. Subject to the terms of the Intercreditor Agreement, which agreement shall remain in place and inviolate after the date hereof and after giving effect to this Ratification Agreement, the Crossroads Superpriority Claim shall be *pari passu* with the BFS Superpriority Claim and shall not attach to or be paid from the Avoidance Actions or any proceeds thereof.

    2.6.    <u>Consent to Use Cash Collateral</u>. Crossroads consents to the Debtor's use of cash collateral of Crossroads on the terms set forth in the Financing Order, and consistent in all material respects with this Ratification Agreement and with the Intercreditor Agreement.

    2.7.    <u>Automatic Stay</u>. Prior to exercising any rights and remedies under the Existing Loan Agreement upon an Event of Default, Crossroads must first obtain relief from the automatic stay imposed by section 362 of the Bankruptcy Code. Crossroads hereby acknowledges and agrees that Accounts sold to BFS under the Existing Sales Agreement are in fact true sales and irrevocable transfers, and accordingly promises to take no action that would frustrate collection by BFS on such Accounts, such as the allegation of a violation of the automatic stay.

3.    ADDITIONAL REPRESENTATIONS, WARRANTIES AND COVENANTS

In addition to the continuing representations, warranties and covenants heretofore and hereafter made by Debtor to Crossroads, whether pursuant to the Existing Loan Agreement or otherwise, Debtor hereby represents, warrants and covenants to Crossroads the following (which shall survive the execution and delivery of this Ratification Agreement):

    3.1.    <u>Financing Order</u>. The Financing Order has been duly entered, is valid, subsisting and continuing and has not been vacated, modified, reversed on appeal, or vacated or modified by any order of the Bankruptcy Court (other than as consented to by Crossroads) and is not subject to any pending appeal or stay.

3.2. <u>Use of Proceeds</u>. All amounts made available by Crossroads to the Debtor pursuant to the Financing Order, the Existing Loan Agreement or otherwise, shall be used by Debtor in accordance with the Financing Order, but in no event inconsistently with the current agreement in effect between Crossroads and Debtor with respect to the financing of Inventory.

4. NOTICES

The Existing Loan Agreement is hereby amended by adding that any notices, requests and demands to the Debtor must also be sent to:

Arthur J. Steinberg, Esq.
KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York 10036
Telephone: (212) 556-2100
Facsimile: (212) 556-2222

5. MISCELLANEOUS

5.1. <u>Amendments and Waivers</u>. This Ratification Agreement may not be changed, waived, discharged or terminated orally, but only by an instrument in writing signed by the party against whom enforcement of the change, waiver, discharge or termination is sought.

5.2. <u>Further Assurances</u>. Debtor shall, at its expense, duly execute and deliver, or shall cause to be duly executed and delivered, such further agreements, instruments and documents in connection with this Ratification Agreement as may be reasonably requested by Crossroads.

5.3. <u>Headings</u>. The headings used herein are for convenience only and do not constitute matters to be considered in interpreting this Ratification Agreement.

5.4. <u>Counterparts</u>. This Ratification Agreement may be executed in any number of counterparts, each of which shall be deemed to be an original, but all of which shall together constitute one and the same agreement. In making proof of this Ratification Agreement, it shall not be necessary to produce or account for more than one counterpart thereof signed by each of the parties hereto. Delivery of an executed counterpart of this Ratification Agreement by telefacsimile shall have the same force and effect as delivery of an original executed counterpart of this Ratification Agreement. Any party delivering an executed counterpart of this Ratification Agreement by telefacsimile also shall deliver an original executed counterpart of this Ratification Agreement, but the failure to deliver an original executed counterpart shall not affect the validity, enforceability, and binding effect of this Ratification Agreement as to such party or any other party.

5.5. <u>Additional Events of Default</u>. The parties hereto acknowledge, confirm and agree that the failure of the Debtor or Crossroads to comply with any of the covenants, conditions and agreements contained herein shall constitute an Event of Default under the Existing Loan Agreement.

IN WITNESS WHEREOF, the parties hereto have caused this Ratification Agreement to be duly executed as of the day and year first above written.

        MFM INDUSTRIES, INC.

        By: _____
            Matthew A. Crane
            President & CEO

CROSSROADS FINANCIAL, LLC

By: _____
Name: _____
Title: _____