## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | **Chapter 11** |
| | ) | |
| **MFM DELAWARE, INC.,** | ) | **Case No. 13-11359 (PJW)** |
| **MFM INDUSTRIES, INC.,** [1] | ) | **Case No. 13-11360 (PJW)** |
| | ) | |
| **Debtors.** | ) | **Jointly Administered** |
| | ) | **Re: Dkt. No. 190** |

**ORDER PURSUANT TO BANKRUPTCY CODE SECTIONS 105, 363 AND 365: (A) SCHEDULING AN AUCTION; (B) SCHEDULING THE DATE, TIME AND PLACE FOR A HEARING ON THE PROPOSED SALE MOTION; (C) APPROVING THE FORM AND MANNER OF (I) THE NOTICE OF THE PROPOSED SALE OF INDUSTRIES' ASSETS, THE AUCTION AND THE APPROVAL HEARING, AND (II) THE NOTICE OF THE PROPOSED ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND LEASES; AND (D) APPROVING (I) BIDDING PROCEDURES, AND (II) BREAKUP FEE**

Upon the emergency motion (the "Motion")[2] of MFM Industries, Inc. ("Industries" and together with MFM Delaware, Inc., the "Debtors"), seeking, among other things, entry of an order:  (a) authorizing and scheduling an auction at which Industries will solicit the highest and best bid for the sale of substantially all of Industries' assets; (b) scheduling the date, time and place for a hearing on the proposed sale; (c) approving the form and manner of the notice of (i) the Auction and the Approval Hearing (each as defined below), and (ii) the proposed assumption and assignment of Industries' designated executory contracts and unexpired leases and proposed cure costs related thereto; and (d) approving the (i) bidding procedures, and (ii) break-up fee payable to Tolsa USA, Inc.  (the "Stalking Horse Purchaser"); the Court having reviewed the Motion; the Court having heard the statements of counsel and the

---

[1] The last four digits of the taxpayer identification numbers of the Debtors follow in parentheses: (i) MFM Delaware, Inc. (3784); and (ii) MFM Industries, Inc. (6720).

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

evidence submitted in support of the relief requested in the Motion at a hearing held on October 10, 2013 (the "Hearing"); the Court having determined that the relief requested in the Motion is in the best interests of Industries, its estate, its creditors and its other stakeholders; and it appearing that notice of the Motion and the Hearing given by Industries was sufficient under the circumstances; and the Court being fully advised in the premises; it is hereby

## FOUND AND DETERMINED THAT:[3]

A.    The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.

B.    This Court has jurisdiction over the Motion and the transactions contemplated by that certain Asset Purchase Agreement by and between Industries and the Stalking Horse Purchaser dated as of October 10, 2013 (the "Agreement") pursuant to 28 U.S.C. §§ 157 and 1334, and this matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue in this District is proper under 28 U.S.C. §§ 1408 and 1409.

C.    Industries has articulated good and sufficient reasons for approval of the Bidding Procedures.

D.    The Bidding Procedures have been proposed by Industries in good faith, are fair and reasonable, are reasonably calculated to produce the best and highest offers for the Purchased Assets, will facilitate an orderly sale process and will confer actual benefits upon Industries' estate, creditors and other stakeholders. The Bidding Procedures were negotiated at arm's length and in good faith between Industries and the Stalking Horse Purchaser.

---

[3]    Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate. See Fed. R. Bankr. P. 7052 and 9014.

E.      Approval of the Breakup Fee (as defined below) is a necessary and appropriate inducement to the Stalking Horse Purchaser to: (i) make an initial offer which will serve as a "floor" for further bidding, and (ii) negotiate and enter into the Agreement and consummate the transactions contemplated thereby.    The Stalking Horse Purchaser has expended, and will continue to expend, considerable time, money and energy pursuing the transactions proposed in the Agreement and has engaged in arm's length and good faith negotiations with Industries.  Industries has been unable to find a buyer who is willing to enter into a definitive agreement on terms as favorable to Industries and its estate as the Agreement. Recognizing this, Industries has agreed to the Breakup Fee.  Approval of the Breakup Fee is, therefore, in the best interests of Industries and its estate.

F.      Industries' proposed *Notice of Proposed Sale of Substantially All of Industries' Assets, Bidding Procedures, the Auction, and the Approval Hearing* (the "Auction Notice"), attached hereto as Exhibit 1, is adequate and reasonable.

G.      Industries' proposed *Notice of Cure Amounts and Proposed Assumption and Assignment of Executory Contracts and Leases*, attached hereto as Exhibit 2 (the "Cure Notice"), is adequate and reasonable.  Not all of Industries' executory contracts and unexpired leases will be assumed and assigned; unless otherwise agreed to by the Stalking Horse Purchaser (or the party that submits the Prevailing Bid (as defined below)) in writing, only those executory contracts and unexpired leases that are Assumed Contracts pursuant to the terms of the Agreement will be assumed and assigned pursuant to the terms of the Agreement (or pursuant to the terms of another asset purchase agreement with a maker of a Prevailing Bid other than the Stalking Horse Purchaser).

**NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1.      The Motion is granted to the extent set forth in this Order.

2.    All objections to entry of this Order that have not been resolved or withdrawn are overruled on the merits.

3.    The following "Bidding Procedures" are hereby approved and shall be used in connection with the proposed sale of the Purchased Assets:

(a)    Bid Deadline and Initial Overbids. Any third party (other than the Stalking Horse Purchaser) that is interested in acquiring the Purchased Assets must submit an "Initial Overbid" by not later than 5:00 p.m. local time in Wilmington, Delaware on October 21, 2013 (the "Bid Deadline"). A bid received after the Bid Deadline shall not constitute an Initial Overbid. Any such Initial Overbid must:

(i)    Contain a signed definitive asset purchase agreement with the exhibits and schedules thereto (together with a copy of the signed agreement that is marked to show changes from the Agreement) with, at a minimum, the following requirements:  (A) having substantially similar terms and conditions as the Agreement except with higher and better consideration; (B) containing terms and conditions in the aggregate no less favorable to Industries' estate than the terms and conditions in the Agreement (provided that no Initial Overbid shall provide for the payment to the overbidder of any breakup fee, topping fee, termination fee, expense reimbursement or other similar arrangement); (C) provide for a purchase price in an amount equal to or greater than the sum of (1) the Purchase Price, (2) the Breakup Fee, and (3) $100,000; and (D) not be subject to any (1) financing contingency, (2) contingency relating to the completion of unperformed due diligence, (3) contingency relating to the approval of the overbidder's board of directors or other internal approvals or consents, or (4) any conditions precedent to the overbidder's obligation to purchase the Purchased Assets other than those included in the Agreement;

(ii)    Include a cashiers' or certified check in the amount of ten percent (10%) of the purchase price set forth in such Initial Overbid to be held as a deposit (it being understood that the deposit may also be sent by wire transfer of immediately available funds to Industries' counsel to be held in its escrow account);

(iii)    To the extent not previously provided to Industries, be accompanied by evidence satisfactory to Industries in its commercially reasonable discretion (after consulting with the Committee) that the overbidder is willing, authorized, capable and qualified financially, legally and otherwise, of unconditionally performing all obligations under the Agreement (or its equivalent) in the event that it submits the Prevailing Bid (as defined below) at the Auction;

(iv)    Remain open and irrevocable until twenty (20) days after the entry of an order by the Court approving a definitive agreement providing for the sale of the Purchased Assets; and

(v)    Be submitted to (A) MFM Industries, Inc., 3300 Southwest 34th Avenue, Suite 112, Ocala, Florida, 34474, Attention: Matthew A. Crane (Facsimile: (404) 350-9605), (B) co-counsel to the Debtors, King & Spalding LLP, 1185 Avenue of the Americas, New York, New York 10036, Attention: Arthur Steinberg (Facsimile: (212) 556-2222), and (C) Pharus Securities, LLC, 551 5th Avenue, 11th Floor, New York, New York, 10176, Attention: Gregg Mockenhaupt (Facsimile: (215) 243-8233), in each case so as to be received not later than the Bid Deadline. Industries shall provide copies of the Initial Overbids to the Committee's counsel and financial adviser and the Stalking Horse Purchaser's counsel within 24 hours after the Bid Deadline.

(b)    Auction. In the event that Industries timely receives a conforming Initial Overbid from a prospective purchaser as described above (a "Qualified Bidder"), then Industries will conduct an auction (the "Auction") with respect to the sale of the Purchased Assets. Industries shall hold the Auction for the Purchased Assets at the offices of King & Spalding LLP, 1180 Peachtree Street, N.E., Atlanta, Georgia 30309, commencing on October 25, 2013 at 10:00 a.m. local time, or at such other time and location as may be designated by Industries, with notice of such other time and location to be filed on the Court's docket. Based upon the terms of the qualified bids received and such other information as Industries determines is relevant, Industries may conduct the Auction in the manner Industries determines will achieve the maximum realizable value for the Purchased Assets and that is not inconsistent with any provisions of this Bidding Procedures Order or the Agreement. In order to participate in the Auction, each prospective purchaser shall be required to comply with the requirements of the Bidding Procedures. At the Auction, Qualified Bidders and/or the Stalking Horse Purchaser may submit successive bids in increments of at least $50,000 in cash greater than the prior bid (the "Incremental Bid Amount") (provided that at the Auction, Industries shall have the discretion, after consulting with the Committee, to modify the Incremental Bid Amount) for the purchase of the Purchased Assets until there is only one offer that Industries determines, subject to Court approval, is the highest or best offer for the Purchased Assets (the "Prevailing Bid"). When bidding at the Auction, the Stalking Horse Purchaser shall receive a "credit" in the amount of the Breakup Fee. All bidding for the Purchased Assets will be concluded at the Auction and there will be no further bidding at the Approval Hearing. If no conforming Initial Overbid from a Qualified Bidder shall have been received at or prior to the Bid Deadline, the Auction will not be held and the Approval Hearing will proceed with respect to the Agreement. In determining the Prevailing Bid, Industries will consider, among other things: (i) the number, type and nature of any changes to the Agreement requested by each bidder; (ii) the extent to which such modifications are likely to delay closing of the sale of the Purchased Assets and the cost to Industries of such modifications or delay; (iii) the total consideration to be received by Industries; (iv) the nature of the consideration to be received by Industries; (v) the likelihood of the bidder's ability to close a transaction and the timing thereof; and (vi) the net benefit to Industries' estate.

(c)    Approval Hearing. The Approval Hearing will be conducted at 11:30 a.m. local time, on October 28, 2013, in Courtroom #2, United States Courthouse, 824 North Market Street, 6th Floor, Wilmington, Delaware 19801, at which time Industries intends to present the Prevailing Bid for approval by the Court pursuant to the provisions of

sections 105, 363(b), 363(f), 363(m), 363(n) and 365 of the Bankruptcy Code. Industries shall be deemed to have accepted a bid only when the bid has been approved by the Court at the Approval Hearing. The Court will not consider any bids from entities that did not participate in the Auction, or from any Qualified Bidder that did participate at the Auction but that did not submit such bid at the Auction. Upon the failure to consummate a sale of the Purchased Assets after the Approval Hearing because of the occurrence of a breach or default under the terms of the Prevailing Bid, the next highest or otherwise best bid (the "Backup Bid"), as determined as soon as practicable after the conclusion of the Auction, and as disclosed at the Approval Hearing, shall be deemed the Prevailing Bid without further order of the Court and the parties shall be authorized to consummate the transactions contemplated by the Backup Bid. The party submitting the Backup Bid may be required by Industries to close on such Backup Bid within 20 days after the conclusion of the Auction.

(d)    Highest and/or Best Bid.  At all times during the sale process, Industries shall retain full discretion and right to determine, in the sound exercise of its business judgment, which bid constitutes the highest or otherwise best offer for the purchase of the Purchased Assets, and which bid should be selected as the Prevailing Bid, if any, all subject to final approval by the Court pursuant to the provisions of section 363(b) of the Bankruptcy Code.  Without limiting the generality of the foregoing, Industries may, at any time before entry of an order of the Court approving a Prevailing Bid, reject any bid that Industries determines is (i) inadequate or insufficient, (ii) contrary to the requirements of the Bankruptcy Code or the Bidding Procedures, or (iii) contrary to the best interests of Industries, its estate, its creditors or its other stakeholders.  Industries may adopt rules for the Auction that, in the sound exercise of its business judgment, will better promote the goals of the Auction (provided that such rules shall not be materially inconsistent with the Bidding Procedures Order or the Agreement).

(e)    Sale Implementation.  Following the approval of the Prevailing Bid at the Approval Hearing, Industries will be authorized to take all commercially reasonable and necessary steps to complete and implement the transaction(s) contemplated by the Prevailing Bid.

4.    Recognizing the Stalking Horse Purchaser's expenditure of time, energy and resources, Industries is authorized to provide certain bidding protections to the Stalking Horse Purchaser specified in Section 7.4(b) of the Agreement.  Specifically, upon the consummation of a sale of all or substantially all of the Purchased Assets to any third party (other than the Stalking Horse Purchaser) who submits a Prevailing Bid for the Purchased Assets, or in the event Industries commits a material breach of the Agreement or unilaterally abandons the consummation of the transactions contemplated by the Agreement, Industries shall pay to the Stalking Horse Purchaser cash or other immediately available funds in an amount equal to

$240,000 (the "Breakup Fee"); provided, however, the Breakup Fee shall not be due and payable if the Stalking Horse Purchaser has committed a material breach of the Agreement prior to the consummation of such sale to the third party. The parties agree that the Breakup Fee shall be the full and liquidated damages of the Stalking Horse Purchaser arising out of any termination of the Agreement pursuant to Section 12.1(g) thereof. The provisions of Section 7.4(b)(iii) of the Agreement shall survive any termination of the Agreement pursuant to Section 12.1(f) thereof.

5.      The Breakup Fee shall be treated as an administrative expense claim pursuant to sections 503(b)(1) and 507(a)(2) of the Bankruptcy Code. The Breakup Fee shall be paid by Industries to the Stalking Horse Purchaser within three (3) Business Days following the closing of a sale of all or substantially all of the Purchased Assets to any third party (other than the Stalking Horse Purchaser) who makes a Prevailing Bid, and shall be paid to the Stalking Horse Purchaser prior to the payment of the proceeds of such sale to any third party asserting a Lien on the Purchased Assets (and no Lien of any third party shall attach to the portion of the sale proceeds representing the Breakup Fee).

6.      Each Qualified Bidder participating at the Auction will be required to certify that it has not engaged in any collusion with respect to the bidding or the sale.

7.      Bidding at the Auction will be transcribed or videotaped.

8.      The Auction Notice is hereby approved as good and sufficient notice of the sale of the Purchased Assets, the Auction and all proceedings related thereto. In the event that there are any changes to the date, time or place of the Auction, Industries shall file a notice of such change with the Court.

9.      Only Qualified Bidders and the Stalking Horse Purchaser shall be entitled to participate at the Auction. In addition, representatives of and advisers to the following entities shall be allowed to attend the Auction: (a) the Debtors; (b) the Committee; (c) Thomas Kraatz;

(d) Bibby Financial Services (Midwest), Inc.; (e) Crossroads Financial, LLC; (f) Palmer Resources, LLC; and (g) the United States Trustee. Any other party that wants to attend the auction must provide notice to Scott Leonhardt via e-mail to leonhardt@teamrosner.com prior to the Bid Deadline.

10.    Industries shall serve the Auction Notice upon the persons and in the manner specified in the Motion. Such service shall be deemed good and sufficient notice of this Order, the Motion, the Bidding Procedures, the Auction, the Approval Hearing, and all proceedings to be held thereon.

11.    The Cure Notice is hereby approved as good and sufficient notice of the proposed assumption and assignment of the Assumed Contracts (as such term is defined in the Agreement). Unless otherwise agreed to by the Stalking Horse Purchaser in writing, (i) no executory contract or unexpired lease included in the Cure Notice that is not an Assumed Contract shall be assumed and assigned to the Stalking Horse Purchaser and (ii) the Stalking Horse Purchaser shall have no liability for any executory contract or unexpired lease of the Debtors that is not an Assumed Contract.

12.    Industries shall serve the Cure Notice on all counterparties to the executory contracts and unexpired leases identified in the Cure Notice in the manner specified in the Motion.

13.    The Bidding Procedures (including the Breakup Fee) are fair and reasonable, are reasonably calculated to produce the best and highest offers for the Purchased Assets, and will confer actual benefits upon Industries' estate. The Bidding Procedures represent an exercise of Industries' sound business judgment and will facilitate an orderly sale process.

14.    Objections, if any, to the sale of the Purchased Assets, shall be in writing, shall set forth the name of the objecting party, the basis for the objection and the specific grounds

therefor, and shall be filed with the Court and served so as to be actually received by 5:00 p.m. (local time in Wilmington, Delaware) on October 24, 2013, by: (i) co-counsel to the Debtors, King & Spalding LLP, 1185 Avenue of the Americas, New York, New York 10036, Attention: Arthur Steinberg; (ii) Office of the United States Trustee, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801, Attention: Mark Kenney; and (iii) counsel to the Official Committee of Unsecured Creditors, Benesch, Friedlander, Coplan & Aronoff, 222 Delaware Avenue, Suite 801, Wilmington, Delaware 19801, Attention: Michael J. Barrie. Each person or entity who does not object thereto on or prior to the October 24, 2013 deadline shall be deemed to have consented to the sale of the Purchased Assets.

15.    Objections, if any, that relate to the possible assumption and assignment of Industries' executory contracts and unexpired leases (including, but not limited to, any objections relating to the validity of the cure amounts as determined by Industries or to otherwise assert that any amounts, defaults, conditions, or pecuniary losses must be cured or satisfied under any of the assigned executory contracts or unexpired leases as of the date of the Approval Hearing (not including accrued but not yet due obligations) in order for such contracts and leases to be assumed and/or assigned (a "Cure Objection")), shall be filed with the Court and served so as to be actually received by 5:00 p.m. (local time in Wilmington, Delaware) on October 24, 2013 (the "Cure Objection Deadline"), by: (i) co-counsel to the Debtors, King & Spalding LLP, 1185 Avenue of the Americas, New York, New York 10036, Attention: Arthur Steinberg; (ii) Office of the United States Trustee, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801, Attention: Mark Kenney; and (iii) counsel to the Official Committee of Unsecured Creditors, Benesch, Friedlander, Coplan & Aronoff, 222 Delaware Avenue, Suite 801, Wilmington, Delaware 19801, Attention: Michael J. Barrie.

16.    Except as set forth herein, unless a Cure Objection is filed and served by a non-debtor party to an executory contract or unexpired lease that may be assumed and assigned by the Cure Objection Deadline, all interested parties who have received actual or constructive notice of such Cure Objection Deadline shall be deemed to have waived and released any right to assert a Cure Objection and to have otherwise consented to the assumption and assignment of the executory contracts and unexpired leases set forth on the Cure Notice as served (to the extent such executory contracts or unexpired leases are or become Assumed Contracts) and shall be forever barred and estopped from asserting or claiming against Industries, the Stalking Horse Purchaser or any acquirer of the Purchased Assets, or any other assignee of them, that any additional amounts are due or defaults exist, or conditions to assignment must be satisfied, under such executory contract or unexpired lease for the period prior to the date of the Approval Hearing.

17.    Each Cure Objection shall set forth the cure amount the objector asserts is due, the specific types and dates of the alleged defaults, pecuniary losses, conditions to assignment and the support therefor.

18.    Any hearings with respect to the Cure Objections may be held (a) at the Approval Hearing; or (b) at such other date as the Court may designate. A properly filed and served Cure Objection shall reserve such party's rights against Industries (but not against any purchaser of the Purchased Assets) respecting the Cure Costs, but shall not constitute an objection to the relief generally requested in the Motion.

19.    Notwithstanding any provision in the Bankruptcy Rules to the contrary: (a) this Order shall be effective immediately and enforceable upon its entry and the stay provided for in Bankruptcy Rule 6004(h) is hereby waived; (b) Industries is not subject to any stay in the implementation, enforcement or realization of the relief granted in this Order; and (c) Industries

is authorized and empowered to, and may in its discretion and without further delay, take any action and perform any act necessary to implement and effectuate the terms of this Order.

20.    To the extent this Order is inconsistent with any prior order or pleading with respect to the Motion in these cases, the terms of this Order shall govern.

21.    This Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation of this Order.

SO ORDERED by the Court this 10 day of October 2013.

THE HONORABLE PETER J. WALSH
UNITED STATES BANKRUPTCY JUDGE

## EXHIBIT 1 TO PROPOSED BIDDING PROCEDURES ORDER

**Auction Notice**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | **Chapter 11** |
| | ) | |
| **MFM DELAWARE, INC.,** | ) | **Case No. 13-11359 (PJW)** |
| **MFM INDUSTRIES, INC.,** [1] | ) | **Case No. 13-11360 (PJW)** |
| | ) | |
| **Debtors.** | ) | **Jointly Administered** |
| | ) | |

**NOTICE OF PROPOSED SALE OF SUBSTANTIALLY ALL
OF MFM INDUSTRIES, INC.'S ASSETS, BIDDING PROCEDURES,
THE AUCTION, AND THE APPROVAL HEARING**

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

1.       On October 4, 2013, MFM Industries, Inc. ("Industries"), filed its *Emergency Motion for Entry of Orders Pursuant to 11 U.S.C. §§ 105, 363, and 365 (A) Authorizing and Scheduling an Auction at which Industries will Solicit the Highest or Best Bid for the Sale of Substantially all of its Assets; (B) Approving Bidding Procedures Related to Conduct of Auction; (C) Approving Breakup Fee; (D) Approving the Form and Manner of Notices of (I) Proposed Sale of MFM Industries, Inc.'s Assets, the Auction and the Approval Hearing, and (II) Proposed Assumption and Assignment of Executory Contracts and Leases; (E) Approving the Sale of the Assets to the Party Submitting the Highest or Best Bid; and (F) Granting Related Relief* (the "Motion") [Docket No. 190].   Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

2.       **IN THE MOTION, INDUSTRIES SEEKS, AMONG OTHER THINGS, AUTHORITY TO SELL AND TRANSFER SUBSTANTIALLY ALL OF ITS ASSETS (THE "PURCHASED ASSETS") FREE AND CLEAR OF ALL LIENS, CLAIMS AND OTHER LIENS (AS SUCH TERM IS DEFINED IN THAT CERTAIN ASSET PURCHASE AGREEMENT BY AND BETWEEN INDUSTRIES AND TOLSA USA, INC., DATED AS OF OCTOBER 10, 2013 (THE "APA")), TO TOLSA USA, INC. OR ANOTHER PARTY SUBMITTING THE PREVAILING BID, AND ASSUME AND ASSIGN THE ASSUMED CONTRACTS (AS SUCH TERM IS DEFINED IN THE APA), TO EITHER TOLSA USA, INC. OR ANOTHER PARTY SUBMITTING THE PREVAILING BID.**

3.       On October __, 2013, the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") entered the *Order Pursuant to Bankruptcy Code Sections §§*

---

[1] The last four digits of the taxpayer identification numbers of the Debtors follow in parentheses: (i) MFM Delaware, Inc. (3784); and (ii) MFM Industries, Inc. (6720).

*105, 363, and 365: (A) Scheduling an Auction; (B) Scheduling the Date, Time and Place for a Hearing on the Proposed Sale Motion; (C) Approving the Form and Manner of: (I) The Notice of the Proposed Sale of MFM Industries Inc.'s Assets, the Auction and the Approval Hearing, and (II) The Notice of Proposed Assumption and Assignment of Executory Contracts and Leases; and (D) Approving (I) Bidding Procedures, and (II) Break-up Fee* (the "Order") [Docket No. ____].

4.      **Any third party (other than Tolsa USA, Inc.) that is interested in acquiring the Purchased Assets must submit an Initial Overbid conforming to the requirements set forth in the Bidding Procedures set forth in the Order by not later than 5:00 p.m. local time in Wilmington, Delaware on October 21, 2013 (the "Bid Deadline").**

5.      Any Initial Overbid must be submitted to (A) MFM Industries, Inc., 3300 Southwest 34th Avenue, Suite 112, Ocala, Florida, 34474, Attention: Matthew A. Crane (Facsimile: (404) 350-9605), (B) co-counsel to the Debtors, King & Spalding LLP, 1185 Avenue of the Americas, New York, New York 10036, Attention: Arthur Steinberg (Facsimile: (212) 556-2222), and (C) Pharus Securities, LLC, 551 5th Avenue, 11th Floor, New York, New York, 10176, Attention: Gregg Mockenhaupt (Facsimile: (215) 243-8233), in each case so as to be received not later than the Bid Deadline.  A bid received after the Bid Deadline shall not constitute an Initial Overbid.

6.      In the event that Industries timely receives a conforming Initial Overbid from a Qualified Bidder, Industries will conduct an auction (the "Auction") with respect to the sale of the Purchased Assets.  Industries shall hold the Auction for the Purchased Assets at the offices of King & Spalding LLP, 1180 Peachtree Street, N.E., Atlanta, Georgia 30309, **commencing on October 25, 2013 at 10:00 a.m. local time**, or at such other time and location as may be designated by Industries.  With the exception of Qualified Bidders, the Stalking Horse Purchaser, and representatives of and advisers to the following entities: (a) the Debtors; (b) the Committee; (c) Thomas Kraatz; (d) Bibby Financial Services (Midwest), Inc.; (e) Crossroads Financial, LLC; (f) Palmer Resources, LLC; and (g) the United States Trustee, any other party that wants to attend the auction must provide notice to Scott Leonhardt via e-mail to leonhardt@teamrosner.com prior to the Bid Deadline.  All bidding for the Purchased Assets will be concluded at the Auction and there will be no further bidding at the Bankruptcy Court hearing held to approve the highest or best bid for the Purchased Assets (the "Approval Hearing").

7.      The Approval Hearing will be conducted at **11:30 a.m., on October 28, 2013, before the Honorable Peter J. Walsh, United States Bankruptcy Judge, in Courtroom #2, United States Courthouse, 824 North Market Street, 6th Floor, Wilmington, Delaware 19801**, at which time Industries intends to present the Prevailing Bid for approval by the Bankruptcy Court pursuant to the provisions of sections 105, 363 and 365 of the Bankruptcy Code.  Industries shall be deemed to have accepted a bid only when the bid has been approved by the Bankruptcy Court at the Approval Hearing.

8.      At the Approval Hearing, Industries will seek authorization to consummate the transactions contemplated by either the Prevailing Bid or the APA.  **Industries will seek to sell and transfer the Purchased Assets and assume and assign the Assumed Contracts, subject to the terms of the Prevailing Bid, to either Tolsa USA, Inc. or the purchaser who submitted the Prevailing Bid, free and clear of any and all Liens, other than those specifically assumed by the purchaser submitting the Prevailing Bid.**

9.      Objections, if any, to the sale of the Purchased Assets, shall be in writing, shall set forth the name of the objecting party, the basis for the objection and the specific grounds therefor, and shall be filed with the Bankruptcy Court and served so as to be actually received by **5:00 p.m. local time in Wilmington, Delaware, on October 24, 2013,** by:  (i) co-counsel to the Debtors, King & Spalding LLP, 1185 Avenue of the Americas, New York, New York 10036, Attention: Arthur Steinberg; (ii) Office of the United States Trustee, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801, Attention: Mark Kenney; and (iii) counsel to the Official Committee of Unsecured Creditors, Benesch, Friedlander, Coplan & Aronoff, 222 Delaware Avenue, Suite 801, Wilmington, Delaware 19801, Attention: Michael J. Barrie.  **Each person or entity who does not object thereto on or prior to the October 24, 2013 deadline shall be deemed to have consented to the sale of the Purchased Assets.**

10.      This Notice and the Auction are subject to the terms and conditions of the Order and the Bidding Procedures.  Parties interested in receiving more information regarding the sale of the Purchased Assets, subject to any necessary confidentiality agreement, may make a written request to: (a) co-counsel to the Debtors, King & Spalding LLP, 1185 Avenue of the Americas, New York, New York 10036, Attention: Arthur Steinberg, or (b) Pharus Securities, LLC, 551 5th Avenue, 11th Floor, New York, New York, 10176, Attention: Gregg Mockenhaupt.  A copy of the APA may be obtained by making a request to King & Spalding LLP, 1180 Peachtree Street, Atlanta, Georgia 30309, Attention: Missy Heinz.

Date: [_____], 2013
Wilmington, Delaware

/s/ Frederick B. Rosner
THE ROSNER LAW GROUP LLC
Frederick B. Rosner (No. 3995)
rosner@teamrosner.com
824 N. Market Street, Suite 810
Wilmington, Delaware 19801
Telephone:     (302) 319-6300

and

KING & SPALDING LLP
Arthur J. Steinberg
New York Bar No. 1680495
asteinberg@kslaw.com
1185 Avenue of the Americas
New York, NY 10036-4003
Telephone:     (212) 556-2158
Facsimile:     (212) 556-2222

and

Jeffrey R. Dutson
Georgia Bar No. 637106
jdutson@kslaw.com

Annie R. Carroll
Georgia Bar No. 127813
acarroll@kslaw.com
1180 Peachtree Street
Atlanta, Georgia 30309-3521
Telephone:    (404) 572-4600
Facsimile:    (404) 572-5131

CO-COUNSEL FOR THE
DEBTORS-IN-POSSESSION

## EXHIBIT 2 TO PROPOSED BIDDING PROCEDURES ORDER

### Cure Notice

## IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | **Chapter 11** |
| | ) | |
| **MFM DELAWARE, INC.,** | ) | **Case No. 13-11359 (PJW)** |
| **MFM INDUSTRIES, INC.,** [1] | ) | **Case No. 13-11360 (PJW)** |
| | ) | |
| **Debtors.** | ) | **Jointly Administered** |
| | ) | |
| _____ | ) | |

### NOTICE OF CURE AMOUNTS AND PROPOSED ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND LEASES

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

1.      On October 4, 2013, MFM Industries, Inc. ("Industries"), filed its *Emergency Motion for Entry of Orders Pursuant to 11 U.S.C. §§ 105, 363, and 365 (A) Authorizing and Scheduling an Auction at which Industries will Solicit the Highest or Best Bid for the Sale of Substantially all of its Assets; (B) Approving Bidding Procedures Related to Conduct of Auction; (C) Approving Breakup Fee; (D) Approving the Form and Manner of Notices of (I) Proposed Sale of MFM Industries, Inc.'s Assets, the Auction and the Approval Hearing, and (II) Proposed Assumption and Assignment of Executory Contracts and Leases; (E) Approving the Sale of the Assets to the Party Submitting the Highest or Best Bid; and (F) Granting Related Relief* (the "Motion") [Docket No. 190]. Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

2.      On October ___, 2013, the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") entered the *Order Pursuant to Bankruptcy Code Sections §§ 105, 363, and 365: (A) Scheduling an Auction; (B) Scheduling the Date, Time and Place for a Hearing on the Proposed Sale Motion; (C) Approving the Form and Manner of: (I) The Notice of the Proposed Sale of MFM Industries Inc.'s Assets, the Auction and the Approval Hearing, and (II) The Notice of Proposed Assumption and Assignment of Executory Contracts and Leases; and (D) Approving (I) Bidding Procedures, and (II) Break-up Fee* (the "Order") [Docket No. ____].

3.      A hearing to consider the remaining relief requested in the Motion and the results of the Auction (the "Approval Hearing") will be held before the Honorable Peter J. Walsh, United States Bankruptcy Judge, in Courtroom #2, United States Courthouse, 824 North Market Street, 6th Floor, Wilmington, Delaware 19801, **at 11:30 a.m. on October 28, 2013.**

---

[1] The last four digits of the taxpayer identification numbers of the Debtors follow in parentheses: (i) MFM Delaware, Inc. (3784); and (ii) MFM Industries, Inc. (6720).

4.     In connection with any sale of the Purchased Assets authorized at the Approval Hearing, Industries will assume and assign to the Stalking Horse Purchaser (or another acquirer of the Purchased Assets) certain of Industries' executory contracts and leases.  **Not all of the agreements listed in Exhibit A will be assumed and assigned by Industries.**

5.     Industries believes that any and all defaults (other than the filing of these chapter 11 cases) and the actual pecuniary losses under the agreements listed on Exhibit A, to the extent they are Assumed Contracts, can be cured by the payment of the Cure Costs listed on Exhibit A. The inclusion of any document on Exhibit A shall not constitute or be deemed to be a determination or admission by Industries that such document is, in fact, an executory contract or unexpired lease within the meaning of the Bankruptcy Code.

6.     If any non-debtor party to an agreement listed on Exhibit A objects to the Cure Cost listed on Exhibit A for such agreement or objects to the possible assumption and assignment of such agreement, such party must file an objection (a "Cure Objection") with the Bankruptcy Court and serve such Cure Objection so as to be actually received by **5:00 p.m. (local time in Wilmington, Delaware) on October 24, 2013 (the "Cure Objection Deadline"),** by:  (i) co-counsel to the Debtors, King & Spalding LLP, 1185 Avenue of the Americas, New York, New York 10036, Attention: Arthur Steinberg; (ii) Office of the United States Trustee, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801, Attention: Mark Kenney; and (iii) counsel to the Official Committee of Unsecured Creditors, Benesch, Friedlander, Coplan & Aronoff, 222 Delaware Avenue, Suite 801, Wilmington, Delaware 19801, Attention: Michael J. Barrie.  **A Cure Objection must set forth the cure amount the objector asserts is due, the specific types and dates of the alleged defaults, pecuniary losses, conditions to assignment and the support therefor.**

7.     **Except as set forth in the Order, unless a non-debtor party to an agreement listed on Exhibit A files and serves a Cure Objection by the Cure Objection Deadline, such non-debtor party shall be deemed to have: (a) consented to the possible assumption and assignment of such executory contract or unexpired lease to the Stalking Horse Purchaser (or any other acquirer of the Purchased Assets); (b) waived and released any right to assert a Cure Objection; and (c) shall be forever barred and estopped from asserting or claiming against Debtors, the Stalking Horse Purchaser (or any other acquirer of the Purchased Assets), or any other assignee of them, that any additional amounts are due or defaults exist, or conditions to assignment must be satisfied, under such assumed contract or unexpired lease for the period prior to the date of the Approval Hearing.**

8.     Any hearings with respect to the Cure Objections may be held (a) at the Approval Hearing; or (b) at such other date as the Bankruptcy Court may designate.

9.     If a non-debtor party to an agreement listed on Exhibit A agrees with the applicable Cure Cost set forth on Exhibit A and does not otherwise object to Industries' possible assumption and assignment of the such agreement, no further action need be taken on the part of that non-debtor party.

10.     Industries' decision to sell, assign and/or transfer the Assumed Contracts to the Stalking Horse Purchaser (or any other acquirer of the Purchased Assets) is subject to Bankruptcy Court approval and the closing of the transactions contemplated by either the

Prevailing Bid or that certain Asset Purchase Agreement by and between Industries and the Stalking Horse Purchaser, dated October 10, 2013 (the "APA"). Accordingly, absent such closing or further order of the Bankruptcy Court, none of the Assumed Contracts shall be assumed, sold, assigned and/or transferred, and shall in all respects be subject to further administration under the Bankruptcy Code.

       11.    A copy of the APA may be obtained by making a request to King & Spalding LLP, 1180 Peachtree Street, Atlanta, Georgia 30309, Attention: Missy Heinz, phone: (404) 572-4600.

Date: [ _____ ], 2013
Wilmington, Delaware

/s/ Frederick B. Rosner
THE ROSNER LAW GROUP LLC
Frederick B. Rosner (No. 3995)
rosner@teamrosner.com
824 N. Market Street, Suite 810
Wilmington, Delaware 19801
Telephone:    (302) 319-6300

and

KING & SPALDING LLP
Arthur J. Steinberg
New York Bar No. 1680495
asteinberg@kslaw.com
1185 Avenue of the Americas
New York, NY 10036-4003
Telephone:    (212) 556-2158
Facsimile:    (212) 556-2222

and

Jeffrey R. Dutson
Georgia Bar No. 637106
jdutson@kslaw.com
Annie R. Carroll
Georgia Bar No. 127813
acarroll@kslaw.com
1180 Peachtree Street
Atlanta, Georgia 30309-3521
Telephone:    (404) 572-4600
Facsimile:    (404) 572-5131

CO-COUNSEL FOR THE
DEBTORS-IN-POSSESSION

## EXHIBIT A TO CURE NOTICE
## SCHEDULE OF CURE COSTS

| Vendor Name | Type | Start Date | Cure Cost |
|---|---|---|---|
| Acosta Sales- Miami | Broker | | 4,048.26 |
| Acosta Sales – Charlotte | Broker | | 11,885.90 |
| Acosta Sales – Atlanta | Broker | | 345.17 |
| ALDI, Inc. | ALDI Master Purchase Agreement | | 0 |
| Alliance | Broker | | 2,532.27 |
| Bell Sales and Marketing | Broker Contract | | 6,732.44 |
| Big Lots Stores, Inc. | Trademark Sublicense Agreement | | 0 |
| Blue Cross/Florida Blue | Employee Health Insurance | | 0 |
| Bob Lowder & Associates, Inc. | Broker Contract | | 0 |
| Butcher Transportation, Inc. | Transportation Services | | 14,560.20 |
| CenturyLink Sales Solutions, Inc. | Ethernet Services Agreement | | 2,000.92 |
| Chuck Latham Associates, Inc. | Broker Contract and Sales Representative / Principal Agreement | | 38,002.54 |
| CNH Capital LLC | Equipment Operating Lease Agreement (Case Skid Steer Loader) | | 919.84 |
| CNH Capital LLC | Construction Equipment Operating Lease Agreement (Kobelco Excavator) | | 4,485 |
| Commercial Equipment Leasing | Equipment Lease Agreement | | 299.21 |
| Daymon Worldwide, Inc. | Representation Letter Agreement (names Mid Florida Mining as contract party) | | 84,359.85 |
| Delta Express Systems, Inc. | Transportation Services | | 464,132.14 |
| Dolgencorp, LLC and DG Strategic VII, LLC | Master Supply Agreement | | 0 |
| ESM Metro | Broker | | 48,038.76 |
| The Federated Group | Broker | | 9,784.83 |
| Federated Foods, Inc. | Supplier Agreement | | 3,971.22 |
| Florida Northern Railroad | Lease | | 4,950.20 |
| Godshalk, James | Broker | | 4,331.19 |
| Grayco Sales Limited | Broker Contract | | 14,850.25 |
| Great-West Trust Company | Employee 401k Plan | | 0 |
| IGA USA, Inc. | 2013 Vendor in Partnership Invoice | | 0 |
| Integrity Leasing and Financing, Inc. | Equipment Lease Agreement | | 0 |
| Leaf Capital Funding, LLC | Lease Agreement (Kyocera Copier System) | | 4,006.02 |
| MacKinnon Equipment & Services | Full Service Maintenance Agreement | | 11,309.14 |

**EXHIBIT A TO CURE NOTICE**
**SCHEDULE OF CURE COSTS**

| Vendor Name | Type | Start Date | Cure Cost |
|---|---|---|---|
| Marketing Management, Inc. | Broker Contract (Weis Markets) | | 15,016.68 |
| Marketing Management, Inc. | Broker Contract (Fred's Hometown Discount Store) | | 0 |
| Marketing Management, Inc. | Broker Contract (W. Lee Flowers Company) | | 0 |
| Modular Space Corporation | Equipment Lease Agreement | | 9,674.38 |
| Navitas Lease Corp | Equipment Finance Agreement | | 0 |
| NorthWestern Mutual | Employee Long Term Disability | | 0 |
| Paddock Park Office Investors, L.L.C. | Office Lease Agreement | | 16,364.37 |
| Palmer Resources, LLC fka MFM Industries, Inc. | Land Lease and Mineral Mining Agreement | | 50,099.96 |
| Peoples Gas System, a Division of Tampa Electric Company | Gas Transportation Agreement | | 24,172.53 |
| Petsmart, Inc. | Master Vendor Agreement | | 0 |
| Piggly Wiggly LLC | Store Brand License Agreement | | 499.00 |
| Pioneer Food Brokers, Inc. | Broker Contract | | 203.64 |
| PowerTrac Machinery | Equipment Rental Agreement | | 28,908.52 |
| PowerTrac Machinery | Equipment Rental Agreement | | 0 |
| PowerTrac Machinery | Equipment Rental Agreement | | 0 |
| Pro Energy Partners, LP | ITS Agent Agreement | | 0 |
| Publix Supermarkets | Customer Agreement | | 0 |
| Redisca | Broker | | 16,046.38 |
| Sears Holdings Management Corporation | Universal Terms and Conditions - International | | 0 |
| SellEthics Marketing Group, Inc. | Broker Contract (MDI Private Label) | | 1,153.09 |
| SellEthics Marketing Group, Inc. | Broker Contract (Lowe's Foods) | | 0 |
| Standard Insurance Company | Employee Life and Accidental Death, Dismemberment Insurance | | 0 |
| Supermarket Brands | Broker | | 4,580.55 |
| The Palmer Companies, Inc. | Amended and Restated Security Agreement | | 0 |
| Tinsman, Don | Broker | | 209.00 |
| Topco Associates, Inc. | Summary of Supplier Rebate Agreement | | 0 |
| Topco Associates, Inc. | Mark-Up Agreement | | 0 |
| Total Quality Logistics, LLC | Settlement Agreement | | 0 |
| U.S. Water Services Corporation | Water and Wastewater Operations Services Agreement | | 1,153.09 |
| UniFirst Holdings, Inc. | Customer Service Agreement | | 0 |
| United HealthCare Solstice | Employee Dental Insurance | | 0 |

## EXHIBIT A TO CURE NOTICE
## SCHEDULE OF CURE COSTS

| Vendor Name | Type | Start Date | Cure Cost |
|---|---|---|---|
| UTICA LeaseCo, LLC | Equipment Lease Agreement | | 0 |
| Utility Operators, Inc. | Agreement for Water and WasteWater Services (names Mid Florida Mining as contract party) | | 0 |
| Yale Lift Trucks of Florida & Georgia | Master Lease Agreement No. 8427151 | | 0 |
| Ahold USA, Inc. | Private Label Agreement | 8/7/2013 | 0 |
| South East Personnel Leasing, Inc. | Client Leasing Agreement | 6/28/2013 | 0 |